IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SHELIA KELLEY                                                                                          PLAINTIFF

VS.                                        NO.  1:04CV00056 JWC

JO ANNE B. BARNHART,                                                                          DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shelia Kelley, appeals from the denial of her claim for disability insurance benefits.  The decision of the Administrative Law Judge (ALJ) has become the final decision of the Commissioner.  The issue in this case is whether Plaintiff was disabled, within the meaning of the Social Security Act, between her alleged onset date, May 7, 2002, and the date of the Commissioner's final decision, March 24, 2004.  For the reasons that follow, the Court affirms the Commissioner's decision that Plaintiff was not disabled during that time period.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Brown v. Barnhart, 390 F.3d 535, 538 (8th Cir. 2004).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).

Plaintiff was born on March 25, 1959, has a ninth-grade education, and has past work as a certified nurse's aide, cook/deli worker, deli-food service manager, convenience store manager, photographer, waitress and bar manager.  (Tr. 43, 45-50, 122.)  In her initial application, she alleged disability since her onset date due to degenerative disc disease of the back at L4-L5.  She first hurt her back in a car accident in November 2001, but was able to return to work.  She re-injured it in a fall in May 2002, and has not worked since then.  (Tr. 50-51, 121.)  At the hearing before the ALJ in November 2003, Plaintiff testified that she had pain from sitting, standing, or walking, and that she would be unable to work at a job even if she were permitted to work in two-hour increments, with breaks in between.  (Tr. 58-59.)

A claimant is disabled, within the meaning of the Social Security statutes and regulations, if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The regulations provide a five-step process to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520 (2005); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  Id.

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  The ALJ next determined, at step two, that Plaintiff

suffered from medically determinable impairments associated with L4-L5 instability related to isolated disc collapse with lumbar enthesopathy and facet syndrome of the lumbar spine, but that none of her impairments equaled a step-three listed impairment as contained in the regulations. At step four, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work but was unable to perform any of her past work. At step five, after referring to the medical-vocational guidelines, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff could perform. The ALJ thus concluded that Plaintiff was not disabled. (Tr. 28-29.)

### RFC/Treating Physicians' Opinions

Plaintiff first argues that, in determining that she had the RFC to perform a full range of sedentary work, the ALJ erred in failing to credit the opinions of her treating physicians regarding the severity of her back condition and her ability to work.

Residual functional capacity is defined as "what [the claimant] can still do" in a work setting despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Eichelberger, 390 F.3d at 591; see 20 C.F.R. § 404.1527(e)(2), § 404.1545(a)(3).

Here, the ALJ found that Plaintiff retained the RFC to lift-carry and push-pull up to ten pounds occasionally, with the ability to sit six to eight hours in an eight-hour workday (at least two hours continuously) and the ability to stand and/or walk at least two hours in

an eight-hour workday. (Tr. 26.)  Substantial evidence in the record supports this determination.

The record contains the following medical evidence regarding Plaintiff's back condition.  Following her November 2001 car accident, Plaintiff was able to continue working until she fell in May 2002.  At that time, her family doctor referred her to an orthopedic specialist, Dr. John A. Waller.  MRIs showed that she had degenerative disc disease at L4-5, with evidence of pseudo-disc protrusion, and an overhanging marginal osseus ridge causing bilateral inferior neural foraminal narrowing, but no direct nerve root impingement.  (Tr. 140, 147.)   Dr. Waller recommended a rigid chairback brace and physical therapy, and he advised her to rest and not drive, to continue her anti-inflammatory medication and Valium,[1] and to return in two weeks.  (Tr. 153-55.)

Her next complaint of back problems was in September 2002, to her family doctor, who referred her to Dr. Richard Peek with the Arkansas Spine Center.  Dr. Peek advised conservative therapy and Paxil and Percocet[2] for pain management, administered a spinal injection and recommended facet blocks.  (Tr. 166-68.)  On October 25, 2002, facet joint injections were administered by Dr. William Ackerman, an orthopedic specialist.  (Tr. 156.)  One month later, Plaintiff reported to Dr. Peek that the facet blocks had helped to alleviate her pain.  Dr. Peek observed diminished range of motion in the lumbar spine with

---

[1] Valium is used to treat anxiety disorders, for short-term relief of anxiety symptoms, and to relax muscles.  See www.pdrhealth.com/drug_info.

[2] Percocet is a narcotic analgesic used to treat moderate to moderately severe pain.  Paxil is an antidepressant.  Id.

tenderness to palpation. He diagnosed isolated disc resorption and disc injury at L5-S1 with facet arthrosis, and recommended continued conservative care. (Tr. 165.)

Plaintiff next sought medical treatment for her back ten months later, on September 16, 2003, when she returned to Dr. Peek with complaints of continued chronic lower back pain. Dr. Peek noted diminished range of motion, tenderness to palpation, and lower back spasms, along with persistent motion in the L4-5 area. He again diagnosed disc resorption and internal disruption and said that Plaintiff could consider surgery (lumbar fusion), a morphine pump, or spinal stimulation. Because Plaintiff did not want to undergo surgery, Dr. Peek decided to continue conservative treatment with narcotic analgesics to see if the disc would autofuse. He stated, "[Plaintiff] is disabled from employment." (Tr. 179.)

On November 18, 2003, Dr. Thomas M. Ward, of Little Rock Physical Medicine and Rehabilitation Associates, wrote a letter stating that he had evaluated Plaintiff on two occasions and that she reported daily pain of 8 or 9 on a scale of 0 to 10. (Tr. 180.) On November 21, 2003, Plaintiff was treated by her family doctor for depression/anxiety and "chronic pain." (Tr. 182.)

In assessing the weight to give a particular physician's findings, the Commissioner will look at the nature and length of the treatment relationship and frequency of examination, the extent of the treatment provided and examinations and testing performed or ordered, the existence of supporting medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and whether the source is a specialist in the medical area at issue. 20 C.F.R. § 404.1527(d)(1)-(6). The Commissioner is required to give controlling weight to the opinion of a treating physician only if "it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Id. § 404.1527(d)(2).

First, it is clear that the ALJ *did* consider and give weight to the opinions of each of the mentioned physicians (Drs. Peek, Ward, Ackerman and Waller) in determining Plaintiff's RFC, specifically referring to and discussing their findings. (Tr. 21-22, 25.) The ALJ also discussed the RFC findings of the state agency medical consultants who evaluated Plaintiff at the administrative levels, ultimately concluding that her overall functional capabilities were "somewhat more restricted" than the agency findings based on the record as a whole, which would necessarily include the conclusions of the other physicians. (Tr. 27-28.) Comparison with the agency RFC assessment shows that the ALJ's final determination reflected significantly more restrictions on standing/walking (maximum of two hours, rather than six), lifting-carrying (up to ten pounds occasionally, rather than twenty pounds occasionally and ten pounds frequently), and pushing-pulling (up to ten pounds occasionally, rather than unlimited). (Tr. 26, 169-78.) With the exception of Dr. Peek's finding of complete disability, none of Plaintiff's treating physicians placed any restrictions on her continuing ability to sit, stand or walk, nor did they assess her functionality in any of those areas.

Second, there is no dispute that Plaintiff suffers from severe degenerative disc disease or that she experiences pain due to her condition. The real issue is whether that condition produces sufficient pain and functional restrictions to prevent her from performing any kind of work. See Anderson v. Barnhart, 344 F.3d 809, 811-15 (8th Cir. 2003) (affirming ALJ's conclusion that claimant suffering from severe degenerative disc disease retained the RFC to perform light and sedentary work); Gregg v. Barnhart, 354 F.3d 710,

713-14 (8th Cir. 2004) (crucial question is not whether claimant experiences pain, but whether claimant's credible, subjective complaints prevent him from performing any type of work).

Third, the Commissioner was not bound by Dr. Peek's opinion that Plaintiff was unable to work. A medical source opinion that a claimant is "disabled" or "unable to work" need not be given controlling weight by the Commissioner because it involves an issue reserved for the discretion of the Commissioner. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); 20 C.F.R. § 404.1527(e)(1). The record shows that Dr. Peek saw Plaintiff only three times over the twenty-two month period of alleged disability, and he did not state what specific functional restrictions were present to support his conclusion of total disability. As further explained below, other evidence in the record was inconsistent with Dr. Peek's conclusion of total disability during the relevant time period.

Fourth, Dr. Ward's statement is simply a reflection of Plaintiff's subjective complaints as to her level of pain and was expressly taken into account by the ALJ in assessing the nature and severity of her symptoms. (Tr. 25.) Also, the record references only two visits to Dr. Ward, and the dates are not specified.

Fifth, Dr. Ackerman treated Plaintiff once during the relevant time period for the purpose of administering the facet blocks recommended by Dr. Peek. He imposed no functional restrictions, and Plaintiff reported that the procedure alleviated her pain.

Next, the records show treatment by Dr. Waller only once, and this was shortly after Plaintiff's May 2002 injury and alleged onset date. He recommended that she work with a physical therapist, but there is no record that was done and she did not show up for a

scheduled follow-up visit to Dr. Waller in June 2002.  (Tr. 155.)[3]  See Eichelberger, 390 F.3d at 590 (claimant's cancellation of physical therapy appointments is proper consideration for ALJ in determining credibility of allegations of disabling pain).

Finally, other evidence in the record is inconsistent with a finding of total disability. In making an RFC assessment, the ALJ must determine the claimant's credibility, as his or her subjective complaints play a role in assessing the RFC.  Ellis, 392 F.3d at 995-96. The ALJ is in the best position to gauge credibility and is granted deference in that regard. Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Nevertheless, before discounting a claimant's subjective complaints, the ALJ must acknowledge and consider the following factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  Eichelberger, 390 F.3d at 590 (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  Subjective complaints of pain may be discounted if there are inconsistencies in the record as a whole.  Ellis, 392 F.3d at 996.

Here, reciting and applying the appropriate Polaski factors and relevant Social Security regulation and ruling, (Tr. 23), the ALJ found that Plaintiff's subjective complaints of severely limiting symptoms were "notably inconsistent" with other substantial evidence in the record.  (Tr. 26.)

---

[3]The record does contains a checklist "work restriction form" signed by Dr. Waller on September 9, 2002, noting that Plaintiff's work should be limited to "zero" hours a day. (Tr. 152.) Plaintiff does not rely on this as supporting a disability showing, nor would it be controlling.  Dr. Waller simply made this notation without marking any of the listed functional restrictions regarding specific work-related tasks, without indicating that he had examined Plaintiff since May 28, 2002, and without stating any supporting medical evidence.

The ALJ noted that a finding of total disability was inconsistent with the extent of Plaintiff's daily activities. (Tr. 24.) She reported that she was able to take care of her own personal needs, care for her disabled husband and two young grandchildren, do laundry, wash dishes, change bedsheets, vacuum and sweep, shop for groceries and clothes, run errands, walk for exercise, and prepare about one meal a day, which took one to two hours. (Tr. 54-57, 100-01, 111-12.) Although she testified that she could not drive long-distances, she drove one and one-half hours to the hearing, stopping to shop at Wal-Mart along the way. (Tr. 53-54, 57.) Significant daily activities such as these are inconsistent with claims of disabling pain. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005); Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir. 2003) (claimant's claim of limited mobility due to back injury conflicted with his admission that he cared for disabled sister and two children).

The ALJ also noted Plaintiff's "poor and/or inconsistent" work history, (Tr. 24), which is a relevant factor. Ellis, 392 F.3d at 996 (sporadic work history is relevant in determining credibility of claimant's subjective complaints).

The ALJ also noted that Plaintiff reported no significant adverse side effects from her medication, and that her pain symptoms were adequately controlled by medication, which permitted her to remain active in her routine daily activities without significant limitation of function. (Tr. 24, 26.) The record shows that, although Plaintiff took narcotic analgesics for her pain, she never reported any debilitating side effects and she never indicated that the pain medication was ineffective. (Tr. 61, 102, 113, 126.) Evidence of effective medication resulting in relief may diminish the credibility of a claimant's subjective

complaints. Guilliams, 393 F.3d at 802. Moreover, a condition that can be controlled by treatment or medication cannot be considered disabling. Brown, 390 F.3d at 540.

The ALJ also thoroughly discussed the medical evidence from the specialists who treated her, as set forth above. Additionally, it is noteworthy that Plaintiff contacted her primary care physicians on ten occasions between May 9, 2002, and December 3, 2003, and neither ever determined her to be unable to work or imposed any continuing functional restrictions.[4] (Tr. 142-50, 181-85.) In fact, the records indicate that Plaintiff only complained of back pain to these physicians four times during the relevant time period, and two of those were immediately following her May 2002 fall. (Tr. 142, 143, 149, 182.) This is inconsistent with Plaintiff's allegation of a disabling back condition spanning a twelve-month period.

Under these circumstances, substantial evidence supports the ALJ's RFC determination.

**Vocational Expert**

Plaintiff also argues that the ALJ erred in relying on the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Reg. 4., without consulting a vocational expert. Plaintiff contends that the guidelines were not applicable due to Plaintiff's severe mental impairment (anxiety/depression) and her moderate to severe pain.

The guidelines are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experiences with

---

[4] The only restriction imposed was on May 9, 2002, which was two days after Plaintiff's fall, when Dr. Vicki Stancil advised no lifting. (Tr. 143.)

differing degrees of exertional impairments. Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998). The Commissioner may use the guidelines to meet its step-five burden of showing the availability of jobs in the national economy which a claimant may perform, if the claimant's characteristics identically match those contained in the guidelines. Id. However, if a claimant's characteristics do not match those in the regulations, either because of nonexertional impairments, or because the claimant is precluded from performing a full range of a particular work classification, the Commissioner is required to procure vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform. Id.

Non-exertional impairments that do not "diminish or significantly limit" the claimant's RFC to perform the full range of guideline-listed activities do not prevent use of the guidelines. Ellis, 392 F.3d at 996. Pain is a nonexertional impairment which may call for the use of a vocational expert, as is anxiety or depression. Beckley v. Apfel, 152 F.3d 1056, 1059-60 (8th Cir. 1998); see 20 C.F.R. § 404.1569a(c)(1)(i).

Here, the ALJ properly determined that Plaintiff's alleged mental impairment was not "severe" and thus did not significantly limit her RFC. The ALJ found that any limitations due to anxiety or depression would be "no more than situational in nature" and "medically managed by the claimant's primary care physician with oral medication only, with no indication of any ongoing recommended and/or pursuit of counseling intervention." (Tr. 22.)

Plaintiff testified at the administrative hearing that she was depressed because she was unable to do the things she used to do and because her grandchildren were "bickering," and she acknowledged that if she could go back to work, she would not be

11

depressed. (Tr. 58, 63, 67-68.) The medical records show that, periodically, Plaintiff was prescribed various anti-depressants or reported that she was taking them, but the record also shows no reports of depression or the need for medication for a eight-month period between July 2002 and March 2003. Furthermore, Plaintiff did not seek mental health treatment or counseling, nor was she recommended for any until November 21, 2003, which was three days before her hearing. She was not evaluated or diagnosed until January 7, 2004, which was more than a month after the hearing. At that time, Dr. Larry S. Felts performed a one-time psychiatric evaluation, diagnosed her as having Major Depressive Disorder, and stated that she was "prevented from functioning adequately at any kind of job" due to her physical limitations and psychiatric problems. (Tr. 186-87.) The ALJ discussed Dr. Felts' opinion, (Tr. 22), but properly declined to give it controlling weight because it was based on a one-time visit, Dr. Felts provided no documentation as to what diagnostic tests were administered during the evaluation, and he appeared to rely largely on Plaintiff's self-reported symptoms. Generally, the opinion of a consulting physician who examines a claimant once does not constitute substantial evidence to support a disability finding. Anderson, 344 F.3d at 812-13; Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992) (ALJ properly gave little weight to one-time post-hearing evaluation by nontreating psychologist where record contained other evaluations concluding no disabling mental impairment). As stated, other substantial evidence in the record is inconsistent with the existence of a severe mental limitation.

Plaintiff's attempts to excuse her failure to pursue more aggressive mental health treatment cannot be wholly excused due to her claims of financial hardship. Brown, 390 F.3d at 540; Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of

financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of poverty).  There is no evidence that Plaintiff attempted to obtain low-cost mental health treatment or counseling or that she had been denied such care because of her poverty.

As to Plaintiff's pain, the ALJ gave his reasons for discounting her subjective complaints in this regard and, as explained, substantial evidence supports his conclusion that her pain symptoms were adequately controlled by medication and did not significantly limit her functional abilities.

Because the ALJ did not find that Plaintiff had any nonexertional impairments which significantly diminished her RFC, he properly relied upon the guidelines without the need for vocational expert testimony.

## Conclusion

After a careful review of the evidence, the Court finds that all of Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 13th day of September, 2005.

_____
UNITED STATES MAGISTRATE JUDGE